CARROLL (TINGEY v.). See Case No. 14,-056.

## Case No. 2,457.

### CARROLL v. WATKINS.

[1 Abb. (U. S.) 474;[1] 2 Chi. Leg. News, 257.]

District Court, S. D. Mississippi. May Term, 1870.

LIEN OF JUDGMENT—EFFECT OF STATE STATUTES.

1. The effect of a judgment of a United States court, as a lien upon the lands of defendant, cannot be restricted by state statutes, or by the construction placed by the state courts upon such statutes.

2. A state statute requiring judgments to be enrolled in the county in which the lands to be affected lie, before they can become liens on real property, has no effect upon the lien of a judgment of a court of the United States. Such judgment becomes a lien on lands throughout the district in which it is recovered.

[Cited in U. S. v. Humphreys, Case No. 15,-422.]

[See note at end of case.]

Hearing upon a bill in equity. This bill was filed by Messrs. Carroll & Hay against Watkins, as assignee in bankruptcy of J. B. Moore and others, to enforce their claim to priority of payment out of the assets in the assignee's hands. Carroll & Hay were commission merchants in New Orleans, and obtained judgment in the circuit court of the United States, sitting in the southern district of Mississippi, against Moore, who was formerly in business as a retail merchant. This judgment was never enrolled in the county in which Moore resided, and in which the property involved in this litigation was situated. After the rendition of this judgment, other creditors of Moore obtained judgments against him in the state court holden within Scott county, the county where Moore's residence and property was; and these judgments were duly enrolled pursuant to a law of the state prescribing that no judgment shall be a lien on lands unless enrolled in the county in which they lie. Soon after these judgments were perfected, Moore filed his petition in bankruptcy, and was declared a bankrupt. The defendant Watkins was appointed his assignee. Lands of Moore lying in Scott county were surrendered to him, and were sold by him under a decree of the district court in bankruptcy. Carroll & Hay then filed this bill or petition against the defendant Watkins, originally, claiming priority in payment out of the proceeds of the lands, on the ground that the judgment of the United States circuit court in their favor was a lien upon the lands in question. By agreement of parties, the other creditors, upon judgments recovered in the state court, applied to be and were admitted defendants. They claimed that the judgment in favor of Carroll & Hay never became a lien, because it was never enrolled in the county; and that their judgments, which were so enrolled, were liens, and were

[1] [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

entitled to priority of payment, although junior in date.

William Yerger, for complainants.

A. Y. Harper, for rival creditors.

HILL, District Judge. This is a bill filed by the complainants against Watkins, assignee of Moore, praying that the lands surrendered by Moore shall be sold, and the proceeds applied to the payment of their judgment against Moore, recovered in the circuit court of the United States for said district. The other defendants filed their petitions, praying to be made parties to this cause; and that said lands be sold and the proceeds applied to the payment of their judgments, obtained in the circuit court of this state for the county of Scott. The judgment of complainants was obtained prior to those of the defendants—the creditors in the judgments in Scott circuit court—but was not enrolled in the county of Scott, where the land is situated. The judgments in the Scott circuit court were duly enrolled in said county before Moore filed his petition to be declared a bankrupt.

The only question presented for decision is, whether or not the judgment of complainants, not being enrolled, constituted a lien on the lands described in the pleadings; if so, their judgment, being prior in date, must first be satisfied; and the residue, if any, applied to the payment of the judgments obtained in the Scott circuit court.

This is one of those vexed questions which occasionally arise between the national and state tribunals, and in which each claims the enforcement of rights emanating under the constitution and laws of the power of its own creation. In this state this conflict commenced with the case of Hamer v. Tarpley, 9 Smedes & M. 310, and continued by the case of Bonaffee v. Fisk, 13 Smedes & M. 682, and Brown v. Bacon, 27 Miss. 589; and in the supreme court of the United States, in the case of Massingill v. Downs, 7 How. [48 U. S.] 760.

Were it conceded that the lien of judgments rendered in the federal courts depends upon the legislation of the state, or the construction given to it by the courts of the state, the controversy would be at an end. The judgment of complainants would have no effect as a lien upon the lands of the bankrupt, there being no evidence that an execution was ever issued and placed in the hands of the marshal to be levied. For in addition to the repeated decisions of the high court of errors and appeals of the state, the legislature, by the provisions of the Code of 1857, p. 525, art. 262, declare in express terms, that no judgment or decree rendered in any court of the United States, shall be a lien upon, or bind any property of the defendants situated out of the county in which said judgment or decree is rendered, until the plaintiff shall file in the office of the clerk of the circuit court of the county in which the property may be situated, an abstract of such judgment or decree, certified by the clerk of the court in which the same was rendered, containing the names of the parties to such judgment or decree, its amount, and the amount appearing to have been paid, if any, &c.

Then in article 263 of the same chapter, and on the same page, it is further provided that no judgment or decree rendered in any court of the United States shall be a lien upon or bind the property of the defendants in the county in which the judgment is rendered, unless the abstract of the judgment is filed and enrolled as provided in article 262. Thus it is seen that so far as the legislative will of the state and the judicial mind of the highest tribunal of the state can settle the quesion, it has been unmistakably done.

The same result would follow if this question were to be governed by section 34 of the judiciary act of 1789 [1 Stat. 92], which provides that "the laws of the several states, except where the constitution, treaties, or statutes of the United States, shall otherwise require or provide, shall be regarded as rules of decision in trials at common law in the courts of the United States, in cases where they apply."

Having given the statutes and decisions of the courts of the state on this question, the next point of inquiry is to ascertain what is the law of the United States on this question, as settled by the courts thereof.

The only case decided by the supreme court of the United States, arising in this state, is the case of Massingill v. Downs, 7 How. [48 U. S.] 760. In that case the judgment claimed as a lien was obtained in the circuit court of the United States for the southern district, on the first Monday in November, 1839, before the passage of the abstract act, as it was called, of 1841. This act restricted the judgment liens to cases in which an abstract of the judgment should be filed in the office of the clerk of the circuit court of the county in which the property was situated, and making its provisions apply to all cases in which judgments had already been rendered, unless the abstract should be filed on or before July 1, 1841. The main question decided was, did that act destroy or make void the lien created by the judgment rendered before its passage? The court held that it did not. The judge, in delivering the opinion of the court, states that the lien, if not an effect of the judgment, was inseparably connected with it, whether the lien was created by the execution and judgment or the statute; and in either case where the right has attached in the courts of the United States, a state has no power, by legislation or otherwise, to modify or impair it. It is true that Justice McLean, in delivering the opinion of the court, does say "that the point certified does not require us to consider whether the law

can operate on a judgment being entered subsequent to its date;" but the whole reasoning given in the opinion goes to show that, had the question arisen on a subsequent judgment, the result would have been the same. The judgment lien in that case was held to grow out of the process act of 1828, that that act was not controlled by section 34 of the judiciary act of 1789. The process act of 1828 remains unchanged in the southern district of Mississippi. There has been no act of congress changing it, nor has there been any rule of court changing or in any way modifying it. The act of the legislature of this state, passed in 1834, making all judgments liens from their rendition, was in force when the process act of 1828 was passed by congress.

The opinion of the court further states "that the circuit courts of the United States exercise jurisdiction co-extensive with their respective districts, and it has never been supposed that by the process act of May 19, 1828 [4 Stat. 278],—which adopted the process and modes of proceeding in the state courts, —the jurisdiction of the circuit courts was restricted. The process and modes of proceeding in the state courts were adopted by congress in reference to the jurisdiction of the circuit courts, and not with the view of limiting those courts."

In those states where the judgment or the execution of a state court creates a lien only within the county in which the judgment is entered, it has not been doubted that a similar proceeding in the circuit court of the United States would create a lien to the extent of its jurisdiction. This has been the practical construction of the power of the courts of the United States, whether the lien was held to be created by the issuing of process, or by express statute. Any other construction would materially affect, and, in some degree, subvert the judicial power of the Union. It would place suitors in the state courts in a much better condition than those in the federal courts. That the decisions of the supreme court of the United States give to judgments rendered in the federal courts a lien upon the property of the defendant whenever situated in the district in this state without enrollment, is admitted, in the opinion of the court, in the case of Brown v. Bacon, 27 Miss. 589. That the state legislature can pass no law binding on the courts of the United States, or giving effect to, or changing the judgments or decrees rendered therein, was distinctly settled by the supreme court of the United States as early as 1825. In the very able opinion of Chief Justice Marshall, in the case of Wayman v. Southard, 10 Wheat. [23 U. S.] 1, the chief justice, in delivering the opinion of the court, uses this strong and pointed language: "That it has not an independent existence in the state legislature is, we think, one of those political axioms, an attempt to demonstrate which would be a waste of ar-

gument not to be excused." The proposition has not been advanced by counsel in this case, and will probably never be advanced. Its utter inadmissibility will at once be presented to the mind, if we imagine an act of the state legislature for the direct and sole purpose of regulating proceedings in the courts of the Union, or of their officers, in executing their judgments. No gentleman, we believe, will be so extravagant as to maintain the efficiency of such an act. It seems not much less extravagant to maintain that the practice of the federal courts and the conduct of their officers, can be indirectly regulated by state legislatures by an act professing to regulate the proceedings of the state courts, and the conduct of the officers who execute the process of those courts. It is a general rule that what cannot be done directly from defect of power, cannot be done indirectly."

In the case of Bank of U. S. v. Halstead, 10 Wheat. [23 U. S.] 51, it is held that the act of the assembly of Kentucky, which prohibits the sale of property taken under executions, for less than three-fourths its appraised value, without the consent of the owner, does not apply to a venditioni exponas issued out of the circuit court of the United States for Kentucky. The question again came before the supreme court in 1862, in the case of Ward v. Chamberlain, 2 Black [67 U. S.] 430, in which it is held that, under the process act of 1828, a decree of the district court of the United States, sitting in admiralty in the state of Ohio, is a lien upon the lands of the defendants. Justice Clifford, in delivering the opinion of the court, gives the following as the settled rules of that court: "That the states have no authority to control or regulate the proceedings in the courts of the United States, except so far as the state process acts are adopted by congress, or by the courts of the United States, under the authority of congress."

Other decisions made by the supreme court of the United States, bearing upon the question, might be cited, but it would extend this opinion to too great a length.

Almost the identical questions now presented came before the United States circuit court for the district of Indiana, at the May term, 1840. In that case the judgment, which was the foundation of the plaintiff's action of ejectment, was obtained at December term, 1827, of said court; no copy of the judgment was filed with the clerk of the county in which the real estate was situated, as required by the laws of Indiana. The defendant claimed title, under the sheriff's deed, upon a junior judgment in the state court of the county in which the real estate was situated, which, it was admitted, was a lien only as against plaintiff's title from the marshal under his judgment. Justice McLean, in delivering the opinion of the court, held that, by force of the process act of 1828, a

lien was created by the defendant's judgment, without any statute directly conferring it. That the act of 1831, of that state, limiting the liens of judgments to those rendered in the county in which the judgment was rendered, or in which a copy of the judgment was filed, could not annul or impair the lien created by the plaintiff's judgment, under and by force of the process act of 1828, and that the jurisdiction of the federal courts is co-extensive with the limits of the state of Indiana, and consequently the liens of its judgments extend throughout the state. From a careful examination of the decisions of the courts of the United States, I am satisfied that the holding is, that judgments or decrees rendered in the courts of the United States become liens on the property of the defendant situated in the district in which the judgment or decree is rendered, subject only to prior liens thereon, from the date of the rendition, without reference to any law of the state not adopted by congress, or the courts of the United States, under congressional authority.

I am further satisfied that such ruling is correct, upon principle, and whether satisfied of the correctness of the principle, or not, it being so settled by the supreme court of the United States, it is my duty to adopt it; and, so holding, must declare the complainants entitled to a prior lien on the lands stated in the bill, which will be sold as other lands under the rules of this court in like cases, and the proceeds, so far as necessary, applied, first, to the payment of complainant's judgment; and then, if any surplus shall remain, to the judgments obtained in the circuit courts of Scott county in their order of priority.

Decree accordingly.

[NOTE. Judgments of the federal courts need not be recorded or docketed in accordance with the state law. U. S. v. Humphreys, Cases Nos. 15,422 and 16,242; Cropsey v. Crandall, Case No. 3,418. And see Massingill v. Downs, 7 How. (48 U. S.) 760; Williams v. Benedict, 8 How. (49 U. S.) 107. And compare Konnig v. Bayard, Case No. 7,924.]